UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

DWIGHT DAVIS,

    Plaintiff,

v.

ALEJANDRO MAYORKAS, *et al.*,

    Defendants.

No. 1:23-cv-22644

**OPINION**

---

**APPEARANCES**:

Trena Michele Riley
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
New York, NY 10007

    *On behalf of Plaintiff.*

Elissa Fudim
DEPARTMENT OF JUSTICE
CIVIL DIVISION
Ben Franklin Station
P.O. Box 868
Washington, DC 20044

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion for Summary Judgment by Plaintiff Dwight Davis ("Plaintiff") ("Motion"), (ECF No. 23), and a Cross-Motion for Summary Judgment by Defendants Alejandro N. Mayorkas, Ur M. Jaddou, Ya-Mei Chen, and Keith Dorr (collectively, "Defendants") ("Cross-Motion"), (ECF Nos. 29, 30). The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the reasons that follow, Plaintiff's Motion is **DENIED**, and Defendants' Cross-Motion is **GRANTED**.

### I.     **BACKGROUND**[1]

Plaintiff was born in Kingston, Jamaica in 1970. (Admin. Rec., ECF No. 22 at 1, 20). In September 1972, Plaintiff's parents, Hazel Davis and Gosset Davis, were married in Jamaica, and subsequently moved to the United States. (*Id.* at 17). Plaintiff entered the United States in 1976 around the age of six. (*Id.* at 1, 20; Supp. Admin. Rec., ECF No. 26 at 165, 169). On December 9, 1980, Plaintiff's mother became a naturalized citizen. (Admin. Rec., ECF No. 22 at 17).

In this action, Plaintiff alleges that around October 1987, his parents separated and his mother left the marital home. (*Id.* at 17, 20). Plaintiff alleges thereafter he lived with his mother, in a separate home, from October 1987 until August 1988, but was welcomed to sleep at his father's home. (*Id.* at 17, 20, 34). Plaintiff's mother filed a contested divorce complaint in the Superior Court of the District of Columbia, Family Division. (*Id.* at 25–33). In her verified complaint, she stated that she separated from her husband in March 1988. (*Id.*). The divorce was

---

[1] Pursuant to the Court's April 12, 2024 Order, the requirement to submit Statements of Material Facts, and responsive statements, pursuant to Local Civil Rule 56.1, was waived, and the parties were permitted to rely upon the administrative record from the United States Citizenship and Immigration Services ("USCIS") proceedings. (ECF No. 21 at 1–2).

finalized by the entry of a court order on December 20, 1991, after Plaintiff had turned eighteen. (*Id.* at 17, 20).

In February 2021, Plaintiff applied to the USCIS for a certificate of citizenship pursuant to former Section 321 of the Immigration and Nationality Act ("INA"), later codified as 8 U.S.C. § 1432(a).[2] (*Id.* at 1–15). In support of his application, Plaintiff's mother submitted a declaration stating she understood "proving that [Plaintiff] lived with [her] (separate from his father) before he turned 18 years old [was] important to his claim to U.S. citizenship." (Hazel Davis Decl., ECF No. 22 at 17). Further, she attested that she separated from her husband "around October 1987" and "[does not] know the precise reason why the divorce case file states that [they] separated in March 1988." (*Id.* at 18). Plaintiff also submitted a declaration in support of his application attesting that his parents separated in October 1987, and following the separation he lived with his mother until he moved in with his girlfriend in August 1988. (Pl. Decl., ECF No. 22 at 21). However, according to a Presentence Report, prepared by the Superior Court of the District of Columbia, Social Services Division, Adult Branch in 1992, Plaintiff stated that he lived with his parents until their divorce and thereafter resided with his father. (Supp. Admin. Rec., ECF No. 26 at 170).

Plaintiff's application was denied by USCIS on August 15, 2022, for failure to establish that the legal separation of his parents occurred before he turned eighteen or that his mother had legal custody, (Admin. Rec., ECF No. 22 at 113–16), and his appeal was denied on June 22, 2023, for the same reasons, (*id.* at 154–57).

---

[2] INA § 321 is no longer in effect, and 8 U.S.C. § 1432(a) was repealed by Congress in October 2000 by the enactment of the Child Citizenship Act of 2001 ("CCA"), codified at 8 U.S.C. § 1431 *et seq. Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 282 (3d Cir. 2022). However, INA § 321 applies in the instant action as all of the relevant facts occurred prior to the enactment of the CCA.

## II. PROCEDURAL HISTORY

On November 27, 2023, Plaintiff commenced this action pursuant to 9 U.S.C. § 1503(a) seeking a declaration that he obtained derivative citizenship from his mother, and therefore is a United States citizen. (Compl., ECF No. 1 at ¶¶ 4–5). Plaintiff filed his Motion on April 29, 2024. (ECF No. 23). Defendants filed their Opposition and Cross-Motion on June 13, 2024, (ECF Nos. 29, 30), to which Plaintiff replied on July 22, 2024, (ECF No. 31). Defendants filed their reply on August 30, 2024. (ECF No. 34).

## III. JURISDICTION

This Court has jurisdiction to determine a claim for derivative citizenship under 8 U.S.C. § 1503(a) which provides an individual "may institute an action . . . for a judgment declaring him to be a national of the United States." Judicial review of claims of derivative citizenship may be accomplished in one of two ways—by appealing an order of removal issued by an Immigration Judge to the Court of Appeals, or by challenging, in the district court, the final administrative denial of a right or privilege upon the ground that one is not a citizen. *See* 8 U.S.C. § 1252(b)(5); 8 U.S.C. § 1503(a). A court conducts a *de novo* review where a party is seeking a declaration of citizenship from the court. *Escamilla-Vargas v. Napolitano*, No. 12-70, 2014 WL 12538131, at *3 (S.D. Tex. Aug. 20, 2014) (citing *Vance v. Terrazas*, 444 U.S. 252, 256 (1980)); *Porter v. Quarantillo*, No. 12-0590, 2012 WL 6102875, at *5 (E.D.N.Y. Dec. 7, 2012) (citing *Richards v. Sec'y of State, Dep't of State*, 752 F.2d 1413, 1417 (9th Cir. 1985)). Plaintiff has proceeded by filing an action in this Court.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

4

judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by h[is] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotations and citation omitted). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

5

## V.     DISCUSSION

There are only two ways to acquire citizenship in the United States: birth or naturalization. *See Miller v. Albright*, 523 U.S. 420, 423 (1998). Plaintiff alleges he derived citizenship, through the latter method, from his mother in 1988 pursuant to INA § 321, which is no longer in effect but existed at the relevant time period. The pertinent portion of the statute provided:

> A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> [ . . . ]
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . ; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of . . . the parent naturalized under clause . . . (3) of this subsection[.]

Evidence of foreign birth gives rise to a rebuttable presumption of alienage whereby the burden of proof to establish citizenship is on the applicant by a preponderance of the evidence. *Berenyi v. Dist. Dir., Immigr. and Naturalization Serv.*, 385 U.S. 630, 637 (1967); *Espichan v. Att'y Gen. of United States*, 945 F.3d 794, 801 (3d Cir. 2019); *Fisher v. Mukasey*, No. 08-1812, 2008 WL 4693135, at * 1 (E.D.N.Y. Oct. 22, 2008). All doubts are to be resolved in favor of the United States and against the claimant. *Berenyi*, 385 U.S. at 637.

Plaintiff contends he satisfies the requirements of Section 321 as his mother was naturalized before he turned eighteen, he resided in the United States as a lawful permanent resident at the time, and he resided in the legal custody of his mother after his parents legally separated. (Motion, ECF No. 23-1 at 1). Plaintiff argues the date of his parents' separation included

in the Findings of Fact, Conclusion of Law and Judgment of Absolute Divorce ("Divorce Decree") conclusively establishes that his parents were legally separated in 1988. (*Id.* at 1–2, 11–14). Specifically, Plaintiff relies upon the following language:

> Beginning on or about March 21, 1988, and until the present, Plaintiff and Defendant without interruption and without cohabitation, have lived separate and apart from each other. This separation has continued without interruption or cohabitation for a period of one year immediately preceding the filing of this complaint for absolute divorce.

(Divorce Decree, ECF No. 22 at 29–30). Defendants contend that the Divorce Decree cannot retroactively establish his parents' date of legal separation as a matter of law. (Cross-Motion, ECF No. 29 at 2, 7–11). Alternatively, Defendants argue that even if the Divorce Decree was legally sufficient to do so, Plaintiff nevertheless failed to meet his burden to establish that he was in his mother's legal custody after his parents separated. (*Id.* at 17–21).

### A. Legal Separation

Courts have declined to "read a meaning into [INA §] 321(a)(3)'s 'legal separation' requirement entirely contrary to the common sense understanding of that phrase, which presupposes a union recognized by law and *a separation recognized by law*." *Charles v. Reno*, 117 F. Supp. 2d 412, 418 (D.N.J. May 9, 2000) (emphasis added). The statute expressly states there must be a "legal separation of the parents" at the time of the relevant parent's naturalization. *Morgan v. Att'y Gen. of United States*, 432 F.3d 226, 229 (3d Cir. 2005) ("[A] legal separation for purposes of § 1432(a) occurs only upon a formal governmental action, such as a decree issued by a court of competent jurisdiction that, under the laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties."); *see also Leslie v. Att'y Gen. of United States*, 208 F. App'x 108, 112–13 (3d Cir. 2006) (finding evidence of an "informal separation" is insufficient to satisfy the "legal separation" requirement under Section 321(a)(3)).

7

Here, there is no dispute that Plaintiff's parents did not formally seek a legal separation, a judicial procedure then available in the District of Columbia, D.C. Code Ann. § 16–904 (b) (1977), when they allegedly separated. As such, Plaintiff relies upon the allegations in the subsequently filed divorce complaint and Divorce Decree to establish the date of legal separation. Thus, the initial threshold question presented in this case is whether a divorce decree can retroactively establish the date of a legal separation within the meaning of Section 321(a)(3). To date, the Third Circuit Court of Appeals has not answered this question.

In *Minasyan v. Gonzales,* 401 F.3d 1069 (9th Cir. 2005), the Ninth Circuit Court of Appeals squarely addressed the issue and held that a divorce decree can retroactively establish a legal separation. In *Minasyan*, the court held the judgment of dissolution of the plaintiff's parents' marriage established the "legal separation" element for plaintiff's derivative citizenship claim because "the order establishe[d] the date of the legal separation for purposes of California law. . . ." 401 F.3d at 1079. In doing so, the Court relied upon the fact that the California state court had separately issued a "*nunc pro tunc* order reiterat[ing] the original judicial determination that [the plaintiff's] parents separated, as a matter of law, [a year before the plaintiff's mother was naturalized]." *Id.* at 1079 n.18.

Plaintiff argues that the "Third Circuit has on multiple occasions *suggested* that it would recognize a timely separation date in a subsequent divorce decree for purposes of derivative citizenship" and urges this Court to follow *Minasyan.* (Motion, ECF No. 23-1 at 2) (emphasis added). The Third Circuit has indeed cited *Minasyan* but has neither adopted nor rejected its holding, and instead left the question as to whether a judicial decree could retroactively establish the date of a legal separation unanswered. *See Espichan*, 945 F.3d at 799; *Rodrigues v. Att'y Gen. of United States*, 321 F. App'x 166, 168 (3d Cir. 2009); *Morgan*, 432 F.3d at 232.

Most recently, the Third Circuit noted the unresolved question in *Spence v. Attorney General of United States*, No. 21-3375, 2022 WL 3369130, at *2 (3d Cir. Aug. 16, 2022), and cited *Minasyan*. In *Spence*, the plaintiff argued that a divorce decree and affidavit filed in connection with his parents' 2019 divorce proceedings was sufficient to establish that his parents legally separated in 1989. *Id.* at *1. The Court reiterated that a "legal separation occurs only upon a formal governmental action . . . under the law of a state or nation having jurisdiction over the marriage." *Id.* at *2. Thus, looking to Pennsylvania law, which did not provide a judicial mechanism to establish a separation prior to a divorce decree, the Court considered whether the divorce decree and affidavit could establish the date of legal separation. *Id.* The affidavit filed in the divorce proceedings stated "the parties to this action separated on 1987-06-18 and have continued to live separate and apart for a period of at least one year." *Id.* at *1. The Court held that the documents were insufficient to establish the date of legal separation because "[t]he 2019 divorce decree, which made no mention of a legal separation nor reference to the affidavit, did not establish that [the plaintiff's] parents were separated as of the date listed in the affidavit or by the time his mother naturalized in 1989." *Id.* at *2. In doing so, the Third Circuit rejected the plaintiff's argument relying upon *Minasyan* and explained,

> [i]n that case, a California state court entered a dissolution decree in 2001 and, subsequently, a formal order recognizing that the petitioner's parents had separated in October 1993. The Ninth Circuit found that the petitioner had established his derivative citizenship *because the nunc pro tunc order reiterated the original judicial determination that the petitioner's parents separated, as a matter of law in October 1993*. In stark contrast, however, the Pennsylvania divorce decree recognized only the date of Spence's parents' divorce, and not the date of their separation. *And even assuming that the decree could act as a nunc pro tunc order establishing a prior legal separation consistent with § 3301, a question we left open in Morgan*, see 432 F.3d at 234 n.3**,** it would not be within two years of Spence's mother's naturalization.

*Id.* at *2 (citations and alterations omitted) (emphasis added).

Here, the Court begins by looking to the law of the District of Columbia, which provided

9

a judicial mechanism for a legal separation. The pertinent portion of the statute provided:

> (b) A legal separation from bed and board may be granted if:
>
> > (1) both parties to the marriage have mutually and voluntarily lived separate and apart without cohabitation; or
> >
> > (2) both parties to the marriage have lived separate and apart without cohabitation for a period of one year next preceding the commencement of the action.

D.C. Code Ann. § 16–904 (b) (1977). Thus, to be eligible for a legal separation under the law of the District of Columbia, Plaintiff's parents must have been living separate and apart for one year prior to the commencement of the divorce action.

It is undisputed that Plaintiff's parents did not avail themselves of this procedure. Thus, the Plaintiff is left with a Divorce Decree which states,

> Beginning on or about March 21, 1988, and until the present, Plaintiff and Defendant without interruption and without cohabitation, have lived separate and apart from each other. This separation has continued without interruption or cohabitation for a period of one year immediately preceding the filing of this complaint for absolute divorce.

(Divorce Decree, ECF No. 22 at 29–30). And a verified divorce complaint reciting the same date. (Divorce Compl., ECF No. 22 at 25).

Plaintiff ignores the fact that the Third Circuit looks to the law of the state or nation which had jurisdiction over the marriage to determine, as a threshold question, whether there was a legal mechanism for separation. *See Morgan*, 432 F. Supp at 234. It is undisputed here that such a mechanism existed and was not invoked by Plaintiff's parents. Thus, as to the initial question—whether a divorce decree can retroactively establish the date of a legal separation—this Court finds as a matter of law that it cannot in cases such as here where there was an available judicial mechanism for legal separation in the relevant jurisdiction that was not utilized. Any other conclusion would nullify the "legal separation" requirement of the statute.

Even assuming a judicial decree could retroactively establish the date of legal separation despite there having been a judicial mechanism for legal separation that the parents failed to utilize, that does not save Plaintiff's claim under the facts presented in this case for three critical reasons. First, the Divorce Decree states only that Plaintiff's parents had been *living separate and apart* since March 21, 1988, and thus, they would not have been eligible for a legal separation under the District of Columbia statute until March 21, 1989, after Plaintiff had turned eighteen on September 7, 1988.

Second, apparently aware that this fact is fatal to his claim, Plaintiff and his mother now allege in this litigation that the date stated in the divorce complaint, verified by his mother, and subsequent repeated in the Divorce Decree, upon which they ask this Court to base his claim for citizenship, is factually incorrect. (Hazel Davis Decl., ECF No. 22 at 18; Pl. Decl., ECF No. 22 at 21). Both now claim that the parents started *living apart* in October 1987 and Plaintiff's mother avers she "[does not] know the precise reason why the divorce case file states that [they] separated in March 1988." (*Id.*). If this new and less-specific assertion, made more than thirty years after the filing of the divorce-related documents, that his parents separated "around October 1987" was accurate, that would mean that Plaintiff's parents would have been entitled to a legal separation under the District of Columbia statute "around" October 1988, coincidentally shortly after Plaintiff turned eighteen. Clearly, the accuracy of the date in any judicial document is critical. This is a key distinguishing fact from *Minasyan* where there was no dispute as to the accuracy of the date in the divorce decree and the decree actually stated the date of legal separation as opposed to here where it merely states a date the parents began living apart. And in *Minasyan* there was no concern of potential manipulation of the date at issue. Thus, again, even if a judicial decree could retroactively establish the date of a legal separation where the parents did not avail themselves of an existing

11

mechanism to legally separate, it cannot do so here where Plaintiff and his mother admit that the date therein is incorrect, thus evidencing it had no material or legal significance to the court's order of divorce. Rather, it appears the incorporation of the date into the Divorce Decree was simply a predicate fact, based on the verified complaint, without any factual evidence in support thereof.

There are also important public policy reasons that support the Court's decision. Allowing a judicial decree and/or related filings to retroactively establish a legal separation date, when the parties now allege it to be factually incorrect, and instead rely upon a different less-specific date asserted in litigation to establish citizenship, could lead to manipulation of the date to achieve the desired outcome in the case. Here, the assertion that the date in the verified divorce complaint and Divorce Decree are inaccurate and that the actual date of separation was "around October 1987" making his parents eligible for a legal separation in October 1988, just weeks after Plaintiff turned eighteen, obviously raises credibility questions and concerns as to the manipulation of the date to achieve a certain result in this case. And allowing such manipulation would render the legal separation requirement in the statute meaningless.

Third, here, as the Third Circuit noted in *Spence*, there was no *nunc pro tunc* order separate from the divorce decree stating or reaffirming the date of legal separation or any order using the term "legal separation." While the Court recognizes that the District of Columbia requires parties live separate and apart for one year before obtaining a contested divorce such that the allegation in the verified complaint and/or Divorce Decree may have had some legal import, *Harris v. Harris*, 424 F.2d 806, 808 n.2 (D.C. Jan. 14, 1970), this does not avoid nor render irrelevant the threshold determination that the District of Columbia indeed had a legal mechanism for a legal separation and does not override the undisputed fact that Plaintiff's parents did not invoke that mechanism. Thus, in this case, the Divorce Decree, and the date Plaintiff's parents began living apart as stated

12

therein, was simply not the equivalent of a legal separation under the law of the applicable jurisdiction.

In short, the absence of a *nunc pro tunc* order, the parties having failed to avail themselves of the existing mechanism for a legal separation, the failure of the divorce decree to clearly and conclusively establish the date of legal separation, and the admitted inaccuracy of the date stated therein, makes this case factually and legally distinct from *Minasyan* and thus requires a different result even if a retroactive divorce decree could establish a legal separation.[3]

For all of these reasons, Plaintiff has failed to establish a legal separation, pursuant to Section 321(a)(3), occurred before he turned eighteen.

### B. Legal Custody

Even if the Court were to find Plaintiff had sufficiently established the date of legal separation, he still fails to meet his burden to show that his mother had legal custody at the relevant time period.

The Court employs a two-step test when determining whether a parent had legal custody at the time of naturalization. *Jaffal*, 23 F.4th at 281. "[I]f there is a 'judicial determination or judicial or statutory grant of custody,' then the parent to whom custody has been granted has legal custody for INA purposes." *Id.* at 287. "[I]f no such determination or grant exists, the parent in 'actual uncontested custody' is deemed to have legal custody." *Id.*

---

[3] Plaintiff's argument that a "wide range of evidence may be legally sufficient" to satisfy the "legal separation" element because the Third Circuit has held that "in some instances, there may be no need to show any government action," as "some jurisdictions might consider parties 'legally separated' if they lived apart for a period of time" lacks merit. (Motion, ECF No. 23-1 at 8 (citing *Jaffal*, 23 F.4th at 283)). Plaintiff's reliance upon *Espichan*, 945 F.3d 794, fails to recognize that the reason the court accepted a non-judicial decree (i.e., a complaint filed in a Peruvian police station) as sufficient to establish "as a matter of law that there was a legal separation" is because there was no mechanism for legal separation available under Peruvian law for a *de facto* marital union. (Motion, ECF No. 23-1 at 8–9). That is not the case here.

13

Here, it is undisputed that there was no judicial determination or statutory grant of custody. Accordingly, the question is whether Plaintiff has established his mother had actual uncontested custody of Plaintiff. The Court finds Plaintiff has failed to meet his burden in this regard.

As noted by Defendants, Plaintiff fails to produce any evidence whatsoever, such as school records, an affidavit, or notarized letter from his father granting his mother sole custody or confirming such fact, tax records evidencing that his mother claimed him as a dependent, affidavits from neighbors, or any other similar supporting evidence, to demonstrate that his mother had actual uncontested custody during the relevant period. Plaintiff relies on nothing more than declarations of himself and his mother. (Hazel Davis Decl., ECF No. 22 at 18; Pl. Decl., ECF No. 22 at 21). Compounding the lack of evidence produced by Plaintiff is the evidence to which Defendants point, which directly refutes Plaintiff's assertion. For example, in the Presentence Report, Plaintiff stated that he lived with his parents until their divorce and thereafter lived with his father. (Cross Motion, ECF No. 29 at 19–20 (citing Pl. Presentence Rep., ECF No. 26 at 170)). Further, he stated that he attended and graduated from a public high school in Washington, D.C. that was located less than a mile and a half from his father's residence as opposed to a school closer to his mother's residence in Hyattsville, Maryland, which was almost three miles away. *Id.* These facts not only undermine Plaintiff's assertions that he resided with his mother after the legal separation, but when considered in the context of the lack of evidence produced by Plaintiff, indeed more likely show that he resided with his father in Washington, D.C.

Thus, unlike other cases where evidence was undisputed or sufficient to establish the custody issue by a preponderance of the evidence, here Plaintiff fails to meet his burden to show his mother had actual uncontested custody by a preponderance of the evidence. *See Rodrigues*, 321 F. App'x at 169–70 (finding plaintiff failed to establish derivative citizenship upon the

naturalization of his father because his "mother provided [his] legal address, listed him as [a] dependent on her tax returns, and handled school visits and court appearances" and thus the record demonstrated his father did not have sole custody).[4]

## CONCLUSION

For the foregoing reasons, Plaintiff's Summary Judgment Motion, (ECF No. 23), is **DENIED**, and Defendants' Motion for Summary Judgment, (ECF Nos. 29, 30), is **GRANTED**.

**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[4] In addition, Plaintiff fails to show that the custody was uncontested and Plaintiff's father consented thereto. Plaintiff does not produce any letters, affidavits, or any other evidence to show that his father consented to him residing with his mother or that him doing so was permanent. *See Montes de Oca-Montero v. Att'y Gen. of the United States*, 205 F. App'x 67, 71 (3d Cir. 2006) (finding plaintiff's father did not have actual uncontested custody as there was "no evidence in the record to indicate that [custody] was uncontested or permanent").